Donovan J. Dunnion
Law Office of Donovan J Dunnion
600 West Broadway, Suite 700
San Diego, CA 92101
(619) 231-8688

Attorney for Defendant,
Alfredo Lomas Navarrete

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:21CR02960-025-GPC |
| Plaintiff, | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | Date: 10/18/2023 |
| ALFREDO LOMAS NAVARRETE, | Time: 02:30 p.m. |
| Defendant. | Honorable Gonzalo P. Curiel |

Comes now Defendant, Alfredo Lomas Navarrete (hereinafter Mr. Navarrete), by and through his attorney, Donovan J Dunnion, and submits the following sentencing memorandum for consideration by the Court at time of sentencing.

## I
## INTRODUCTION

Mr. Navarrete is a 33 year-old, common law married, father of two (2) minor children, who is a citizen of Mexico. This is Mr. Navarrete's first involvement with the criminal justice system and conviction for a criminal offense. As a collateral consequence of his conviction in this case, Defendant has lost his B-1 Visa, will be removed from the United States, and faces a lifetime ban on ever seeking re-entry.

Mr. Navarrete was born in Culiacan, Sinaloa, Mexico. Defendant was primarily raised by his mother as his worked out of town. When home, his parents argued a lot. Defendant's parents formally separated when he was 16 years old.  Life became

difficult, as Defendant's mother suffered severe depression and cried every day. Some days she could not get out of bed, and was unable to hold a job. Defendant was forced to begin working odd jobs to help feed the family, and pay for his school. after a few months; this happened with multiple jobs. Nevertheless, Defendant's basic needs were met and there was no abuse in the home. Defendant's family remain supportive of him.

Mr. Navarrete was married for nine years. The union produced one minor child (age 4 years.)

Mr. Navarrete has been in a common-law relationship for four (4) years. The union has produced one minor child (10 months old.) Defendant's wife is operating the couple's cell phone business in Culiacan. Following Defendant's arrest in this case, shots were fire at the front door of the business. Defendant believes it was a message to keep him from talking, and that his wife, child, and brother's life is in danger.

Defendant has developed hemorrhoids and has had stomach issues since being incarcerated. Defendant has difficulty holding down liquids or food, and suffers from both diarrhea and constipation. Mr. Navarrete has no other physical issues or concerns.

Mr. Navarrete has suffered from depression following his divorce in 2019. He attended counseling in Mexico, which was beneficial. Defendant currently suffers anxiety and depression, which may be situational.

Mr. Navarrete has no alcohol or drug dependency or abuse issues.

Mr. Navarrete graduated from high school in Culiacan. He then attended college for a year and a half at a University in Culiacan, with a major in electrical engineering. Defendant in 16 units shy of his degree. He ceased attending school to work full time, but desires to return and complete his degree in the future. Defendant has vocational skills in carpentry; painting, screen printing, air conditioning ,lighting systems repair and installation, sheet rock installation, basic

2

automobile mechanics, and fan repairs.

Mr. Navarrete has owned and operated the Culiacan Cellular Store for 10 years. Previously, Defendant worked various jobs, including carpenter, painter, screen printer, air conditioning and lighting systems worker, and construction laborer.

Drug traffickers began frequenting Defendant's cell phone store as customers. They purchased phones from him, and he programmed and repaired their phones, providing a large scale of business. After some time the traffickers began to ask him to do things for them and Mr. Navarrete agreed. Prior to this time, Defendant had been careful about his interactions with his customers and stayed away from any illegal activity.

Defendant never became a member of the DTO, but the tasks he performed facilitated the activities alleged in the offenses of conviction - primarily by smuggling goods into Mexico (firearms), facilitating the delivery of cash from the U.S. to Mexico for payment for the goods, and encrypting phones so smuggling conversations would be secure. At the time of Defendant's agreement, he was aware that the DTO was involved in drug trafficking and his action facilitated their activity.

Mr. Navarrete is truly remorseful. Defendant understands the serious nature of the trafficking and the harm caused the community, including the impact it has on his family and himself. Defendant

Mr. Navarrete was arrested on December 6, 2022. On April 6, 2022, Defendant entered a plea to Counts 2-5 of the Indictment, charging him with violation of Count 2: 21 U.S.C. § 952, 960, and 963, Conspiracy to Import Cocaine; Count 3: 21 U.S.C. § 841(a)(1) and 846, Conspiracy to Distribute Cocaine; Count 4: 18 U.S.C. § 1956(a)(2)(A), 1956(a)(2)(B)(i), and 1956(h), Conspiracy to Launder Monetary Instruments; and Count 5: 18 U.S.C. § 371 and 554, 22 U.S.C. § 2278, 22 C.F.R. § 121.1 and 123.1, Conspiracy to Commit Offenses Against the United States.

The plea agreement provides, in relevant part:

    1. Base Offense Level [USSG §§2S1.1(b)(2)(B), 2D1.1]        38

| | | |
|---|---|---|
| 2. Possession of Dangerous Weapon [USSG § 2D1.1(b)] | + | 2 |
| 3. Conviction under 8 U.S.C. § 1956 | + | 2 |
| 4. Acceptance of Responsibility [§3E1.1] | - | 3 |
| 5. Appeal Waiver/Early Resolution [§ 5K2.0] | - | 2 |

Mr. Navarrete is permitted to request an adjustment for role. Defendant is permitted to request other additional downward adjustments, departures, and variances pursuant to 18 U.S.C. §3553.

Mr. Navarrete submits that the Court should grant adjustments safety valve, and role; and a departure based on a combination of circumstances [§5K2.0(c)]; and/or a variance.

## II
## SAFETY VALVE

The Presentence Report, apparently relying on Defendant's stipulation to an enhancement under USSG § 2D1.1(b) for possession in connection with the offense of conviction, found Defendant was ineligible for safety valve. Defendant disagrees.

This case involves grouped offenses, with a mandatory minimum only applying to Counts 2-3 of the indictment. Therefore, the Court should perform the safety valve analysis on the basis of the drug smuggling activity in counts 2-3 to determine eligibility.

18 U.S.C. § 3553(f) provides the statutory basis for safety valve relief from mandatory minimum sentences. It states that, if each of its criteria are met, "the court shall impose a sentence pursuant to guidelines promulgated by the United 4376 States Sentencing Commission . . . without regard to any statutory minimum sentence. . . ." 18 U.S.C. § 3553(f). These criteria include: (2) the defendant did not use violence or possess a firearm in connection with the offense.

*United States v. Smith*, 175 F.3d 1147 (9th Cir. 1999), stated, simply, that "conduct which warrants an increase in sentence under § 2D1.1(b)(1) necessarily defeats application of the safety valve." *Id*. at 1149.

However, *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000), held that

*Smith*, supra, the Court in *Smith* was only addressing the issue of conduct, not the burden of proof and by what quantum that party must establish whether the alleged conduct did, or did not, occur.

The phrase "in connection with" is not defined under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. We interpret it with reference to the same phrase under U.S.S.G. § 2D1.1(b)(1), see <u>United States v. Smith</u>, 175 F.3d 1147, 1149 (9th Cir. 1999), which authorizes a two-level enhancement to a defendant's base offense level if "a dangerous weapon (including a firearm) was possessed." To avoid an enhancement under U.S.S.G. § 2D1.1(b)(1), the burden is on the defendant to prove that it was "clearly improbable" that he possessed a firearm in connection with the offense. U.S.S.G. § 2D1.1 cmt. 3. *Nelson, supra.*

To qualify for safety valve relief under U.S.S.G. § 5C1.2, the burden is also on the defendant to prove, but only by a preponderance of the evidence, that he did not possess a firearm in connection with the drug trafficking offense. See <u>United States v. Nelson</u>, 222 F.3d 545, 550 (9th Cir. 2000). See, also, <u>U.S. v. Ferryman</u>, 444 F.3d 1183 (9th Cir. 2006) [Outlining the different standards, but finding <u>Ferryman</u> did not meet the burden because he had multiple firearms strategically placed indicative of a connection to the marijuana growing enterprise.]

Although conduct which will support a finding under these two sections may be the same, the burden and quantum of proof under §§ 2D1.1 and 5C1.2 remain different. For purposes of §5C1.2, therefore, we hold that, even where a defendant has already received a § 2D1.1 enhancement, the defendant need only show his eligibility for relief by a preponderance of the evidence. <u>Nelson</u>, *supra*.

The activity in this case is grouped, with §2S1.1 becoming the base offense level, through incorporation of the §2D1.1 base offense level.  Thus, while the enhancements are appropriate based on the grouping of offenses, there is no evidence that Defendant possessed firearms during a drug trafficking offense. The smuggling of the firearms and ammunition were at a different time and separate from the other

Defendant's smuggling of drugs. Defendant facilitated the drug smuggling activity, but did not possess firearms during the other Defendant's smuggling of drugs.

While he stipulated that he could not meet the heightened standard of being "clearly improbable," Defendant submits that the possession of the guns - while serious and wrongful, was separate from the actual smuggling of controlled substances.

The offenses in this case are grouped. The narcotics base offense level was applied to all counts through the grouping rules. Thus, with respect to the smuggling of goods offense, the drug base offense level was only applied through cross-references designed to ensure that the offense level for the weapons offenses adequately reflected the seriousness of the weapons offenses. To add an increment for possessing weapons was tantamount to increasing the sentence because defendant possessed weapons in the course of possessing weapons. U.S. v. Concepcion, 983 F.2d 369 (2nd Cir. 1992). It does not make the possession of the firearm in furtherance of the drug smuggling conspiracy itself, precluding safety valve.

There is no evidence that Defendant possessed the firearms in question here during conduct associated with drug-trafficking activities.

The only evidence is that the Defendant also smuggle firearms and ammunition as part of a separate conspiracy - as charged in the indictment. The mere fact that a drug offender possesses [or smuggles] firearms does not necessarily give rise to the firearm enhancement in the drug-trafficking conspiracy itself. The government must show some nexus beyond possession of firearms and the existence of a drug crime. See, U.S. v. Stallings, 463 F.3d 1218 (11th Cir. 2006). The same analysis applies to preclusion of safety valve for a drug offense - as opposed to a separate goods smuggling offense.

Defendant has satisfied all other provisions of the safety valve requirements and should be granted relief from mandatory minimum sentencing

///

# III
# AN ADJUSTMENT FOR ROLE IS APPROPRIATE

U.S.S.G. §3B1.2 provides a range of adjustments for a defendant who plays a part in completing an offense that makes him substantially less culpable than the average person. A minimal participant receives a four (4) level adjustment; a minor participant a two (2) level adjustment, and cases falling in between minimal and minor, a three level adjustment. See, U.S.S.G. §3B1.2.

In order to qualify for a mitigating role reduction, a defendant must demonstrate by a preponderance of the evidence that he was a minimal or minor participant in the criminal activity. United States v. Zakharov, 468 F.3d 1171, 1181 (9th Cir. 2006).

A defendant's role is evaluated relative to all participants in the criminal scheme. United States v. Rojas-Millan, 234 F.3d 464, 472 (9th Cir. 2000).

A defendant is not compared to the hypothetical "average participant." Id. at 473. However, culpability must be evaluated relative to the involvement of other likely actors. Prosecutors need not identify, arrest, or try together all "participants" in a scheme (and thus transform them into "defendants") in order for the district court to consider their conduct when evaluating a particular defendant's relative role. "To the contrary, we read §3B1.2 as instructing courts to look beyond the individuals brought before it to the overall criminal scheme when determining whether a particular defendant is a minor participant in the criminal scheme." Id. at 473-474.

The scope of the district court's analysis must take into account the broad wording of USSG §1B1.3, which defines relevant conduct as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added). Thus, the Guidelines permit consideration of "all relevant conduct, including collateral conduct beyond the charged offense." The Ninth Circuit Court of Appeals has therefore directed the district court to evaluate the defendant's role relative to the broader

trafficking conspiracy of which he/she was part. <u>United States v. Webster</u>, 996 F.2d 209, 211-12 (9th Cir.1993).

In 2015, the United States Sentencing Guidelines were amend to clarify the applicability of role. The commentary states that one of the primary reasons for the amendments was due to a finding that an adjustment for role is being applied less frequently and more sparingly than intended by the commission. The application notes provide, in relevant part:

> "In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> 'For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

In this case, while Defendant agreed to participate, and provided encrypted phones, smuggled goods, and generally knew the DTO was engaged in smuggling and laundering activity, he lacked a full understanding of the full scope of the activity - as noted in the indictment and PSR, the activity of the DTO was complex, extensive and included international DTO activity. Defendant's participation was limited to smuggling goods and facilitating the other activity.

8

Defendant arranged the smuggling of goods, but was not actively in the smuggling of controlled substances. He provided encrypted phones, and participated in the smuggling of goods. However, he lacked authority and discretion over the other smuggling activity of the DTO.

Defendant was not an organizer, leader, manager, or supervisor of others in the offense. Defendant had no discretion, and Defendant did not have a proprietary interest in the controlled substances, or proceeds therefrom. While the smuggling of the firearms was serious, as alleged in the Indictment, it carries a maximum 5 year sentence. To use the degree of participation in this activity to preclude either safety valve or role would be akin to enhancing sentencing for the goods smuggling conviction well beyond the 5 year period.

When compared to the other participants, Defendant's role was minor. Based on the offense conduct/level stipulated to in the plea agreement, The Court should grant the base offense level adjustment of four (4) levels pursuant to USSG §2D1.1(a)(5); as well as a two (2) level adjustment for minor role pursuant to USSG §3B1.2.

## IV
## MULTIPLE CIRCUMSTANCES [USSG §5K2.0(c)]

Pursuant to USSG §5K2.0(c), Defendant requests a departure based on multiple circumstances, each of which are not ordinarily relevant - or may be incomplete, however when combined take this a case outside of the heartland, including, but not limited to USSG §§5H1.2 [education and vocational skills]; 5H1.5 [employment history]; 5H1.6 [family ties and responsibilities]; and §5K2.0(a)(2)(B) [unidentified circumstances.]

Defendant is a dedicated father and husband. He has a lifelong history of lawful activity, and making meaningful contributions to society. Mr. Navarrete has had no prior involvement with the criminal justice system, in either Mexico or the United States.

1       Defendant obtained his high school diploma, attended college, obtained gainful
2 employment, entered into a beneficial relationships, and lawfully provided for his
3 family. Defendant has owned and operated the Culiacan Cellular Store for over 10
4 years, bringing the needed wireless service to the area.
5       Defendant began working as a minor, as his mother was disabled and unable to
6 hold a job - providing food for the family and paying for school to advance his future.
7       Defendant has never abused controlled substances, maintaining a sober
8 lifestyle for the benefit of himself and his family.
9       Defendant's mother suffered disabling depression, and Mr. Navarrete has a
10 history of anxiety and depression - which he rates as a 10 out on a scale of 1-10 while
11 away from his family and in custody in this case. Defendant has voluntarily sought
12 counseling for his condition, and found it beneficial.
13       Defendant has also developed hemorrhoids and has had stomach issues since
14 being incarcerated. These issue should improve upon release from custody, and can
15 be treated out of custody.
16       Mr. Navarrete has expressed genuine remorse for his conduct and understands
17 the severity of the offense, the harm his conduct inflicted on the community -even
18 apologizing to those he distributed to. Defendant is remorseful, and feels he has
19 brought shame to his family.
20       Defendant's family has no history of criminal ties or activity. They remain
21 supportive of Defendant.
22       As a collateral consequence, not considered by the Sentencing Commission,
23 Defendant will be removed from the United States and prohibited from ever seeking
24 reentry. The status will not only remove many future opportunities for advancement -
25 but also eliminate the ability to engage in similar conduct to the offenses found in this
26 case.
27       Under the totality of circumstances, a departure or equivalent variance of at
28 least two (2) levels is proper based on a multiple circumstances.

# VI
# CONCLUSION

The Court should grant an adjustment for Safety Valve of two (2) levels, together with relief from mandatory minimum sentencing. The Court should grant an adjustment for role of four (4) levels pursuant to USSG §2D1.1(a)(5), as well as a two (2) levels pursuant to USSG §3B1.2; and a two (2) level departure based on a combination of circumstances.

After factoring in the three (3) level adjustment for acceptance of responsibility, and two (2) levels for expedited resolution, the resulting offense level is 27, resulting in a guideline sentencing range of 70-87 months .

Defendant requests a sentence or 70 months. Mr. Navarrete has paid a heavy price do to his involvement; and Mr. Navarrete has a good foundation for building a law abiding life with extremely close family member's help and support. Defendant will also need to rebuild his life in Mexico, as he will be banned from residing in the United States - even to maintain family ties.

Alternatively, should the Court find Defendant is ineligible for safety valve, a variant sentence of 120 month, mandatory minimum is requested.

Respectfully Submitted,

Dated:   10/10/2022

    s/Donovan J Dunnion
    dunnionlawoffice@yahoo.com