TARA K. MCGRATH
United States Attorney
MATTHEW J. SUTTON
Assistant United States Attorney
Illinois State Bar No. 6307129
MIKAELA L. WEBER
Assistant United States Attorney
California State Bar No. 279391
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8941
Email: Matthew.Sutton@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 21-cr-02960-AGS |
|---|---|
| v. | Date: October 18, 2023<br>Time: 2:00 p.m. |
| ALFREDO LOMAS NAVARRETE (25), | The Honorable Andrew G. Schopler |
| Defendant. | **UNITED STATES' SENTENCING MEMORANDUM** |

The United States of America, by and through its counsel, Tara K. McGrath, United States Attorney, and Matthew J. Sutton and Mikaela L. Weber, Assistant U.S. Attorneys, hereby files its Sentencing Memorandum.

## I.

## STATEMENT OF THE CASE

On October 19, 2021, a federal grand jury in the Southern District of California returned a five-count indictment charging Alfredo LOMAS Navarrete (D25) and twenty-nine co-defendants with multiple offenses, including Conspiracy to Import Cocaine, in violation of 21 U.S.C. §§ 952, 960, and 963, Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and 846, Conspiracy to Launder Monetary Instruments, in violation

of 18 U.S.C. §§ 1956(a)(2)(A), (a)(2)(B)(i) and (h), and Conspiracy to Smuggle Goods, in violation of §§ 371 and 554(a). On April 6, 2023, LOMAS Navarrete plead guilty to all counts of the indictment. LOMAS Navarrete is currently scheduled for sentencing on October 18, 2023.

## II.
## STATEMENT OF FACTS

### A. Case Overview

OCDETF Operation Baja Metro is a San Diego Strike Force joint investigation led by Homeland Security Investigations (HSI), the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), and the Internal Revenue Service (IRS) targeting the leadership elements, lieutenants, sources of supply, distributors, facilitators, money launderers, and firearms traffickers connected with the VALENZUELA Transnational Criminal Organization. The VALENZUELA TCO is a significant component of the Sinaloa Cartel and investigators believe that the TCO is currently one of the largest importers of cocaine into the United States. The TCO sources cocaine and other controlled substances (including fentanyl, heroin, methamphetamine, and marijuana) from South America and Mexico, transports the drugs to multiple locations along the U.S. / Mexico border using commercial trucking companies, smuggles the narcotics into the country, and distributes them throughout the U.S. The TCO then smuggles the bulk cash proceeds from its drug trafficking activities back to the TCO's leadership in Mexico.

Throughout 2020, the VALENZUELA TCO, including one of its leaders, Jorge Alberto Valenzuela Valenzuela ("JORGE"), was engaged in violent conflict with another component of the Sinaloa Cartel led by Ivan Archivaldo Guzman-Salazar. During this conflict, JORGE's brother and previous TCO leader, Gabriel Valenzuela-Valenzuela (GABRIEL) was killed. This led the VALENZUELA TCO to procure large quantities of firearms, ammunition, tactical gear, armored vehicles, and ballistic vests. A considerable number of these munitions were sourced from within the United States and clandestinely smuggled into Mexico, using numerous arms trafficking networks. In some instances, the TCO used its

own trafficking networks into the U.S. to traffic the munitions into Mexico. In other instances, the TCO relied on the trafficking networks of the arms dealers to move the firearms and ammunition from the United States into Mexico.

As the investigation progressed in 2020, agents began to target private jet aircrafts operated by the TCO. In October 2020, while tracking the movement of one of the aircrafts and conducting surveillance at every stop across the county, agents learned that JORGE was onboard. Agents then coordinated with HSI Boston to arrest JORGE. During his arrest, agents seized fifteen cellular telephones belonging to JORGE. On November 5, 2020, a federal grand jury sitting in the Southern District of California returned an indictment charging JORGE with a drug trafficking offense (in case number 20-cr-3515-AGS). JORGE is currently in custody in the Southern District of California.

Following JORGE's arrest, on November 20, 2020, DEA and HSI agents initiated surveillance at a commercial truck yard being operated by the Valenzuela TCO in the Otay Mesa area of San Diego. Agents ultimately obtained a search warrant for this truck yard and during the search, seized approximately $3,078,880 in bulk U.S. currency, approximately 685 kilograms of cocaine, 24 kilograms of fentanyl, and a pickup truck with a trap gas tank the size of half the truck bed were discovered. The truck yard contained numerous tractors and trailers, along with numerous other vehicles. Inside one of the trailers, agents seized approximately 20,000 rounds of .50 caliber ammunition, along with approximately 427 ballistic plate carriers, approximately 1,000 rounds of .40 caliber ammunition, and approximately 104 magazines for .50 caliber ammunition. Agents also arrested three Valenzuela TCO lieutenants during this operation, namely Jesus BURGOS-Arias, Juan ALATORRE Venegas, and Jose YEE Perez and seized dozens of cellular telephones belonging to them.

Following this significant seizure, in late 2020 and early 2021, agents executed four additional search warrants on commercial properties and warehouses in San Diego belonging to or being utilized by the TCO. Additional narcotics, firearms, bulk cash, and evidence were seized from those searches, along with the seizure of approximately

$1,032,646 in personal assets and vehicles. On February 12, 2021, a federal grand jury sitting in the Southern District of California returned an superseding indictment charging JORGE, BURGOS-Arias, ALATORRE, and YEE with drug trafficking and money laundering offense (in case number 20-cr-3515-AGS). All defendants in this case have subsequently pled guilty and are awaiting sentencing.

On October 19, 2021, a federal grand jury sitting in the Southern District of California returned a five-count indictment charging 30 members of the VALENZUELA TCO with multiple drug trafficking, money laundering and firearms trafficking offenses (in case number 21-CR-2960-AGS). Beginning in late October 2021, agents conducted a coordinated takedown of these TCO members, including lead defendant and sister of JORGE, Wuendi Yuridia Valenzuela Valenzuela (WUENDI). WUENDI was arrested in early November 2021, while appearing to flee her home and quickly relocate her family. During the multi-week takedown, agents seized approximately $863,899 in drug proceeds, $5,538,137 in watches, and multiple vehicles and cellular telephones belonging to TCO members.

On June 30, 2022, a federal grand jury sitting in the Southern District of California returned a four-count indictment charging an additional 50 members of the VALENZUELA TCO with multiple drug trafficking, money laundering and firearms trafficking offenses (in case number 22-CR-1504-AGS).

During this long-term investigation, agents have and continue to analyze dozens of seized telephones and uncover the full scope of the TCO's operations. Despite their extensive use of encrypted communications applications like Threema, WhatsApp, and Seecrypt, investigators have recovered tens of thousands of messages, including photos, videos, and voice notes. These messages show, in painstaking detail, the importation of thousands of kilograms of controlled substances (primarily cocaine but also methamphetamine and fentanyl) into the Southern District of California for distribution across the United States, as well as the collection of millions of dollars in drug proceeds which were smuggled into Mexico.

**B.     Alfredo LOMAS Navarrete (D25)**

During the investigation, agents identified Alfredo LOMAS Navarrete as a major firearms trafficker for the TCO. Agents recovered hundreds of messages between JORGE and LOMAS in which they discussed firearms trafficking throughout 2020. LOMAS worked closely with JORGE and other high-ranking organization members to supply hundreds of firearms to the TCO. These firearms ranged from .50 caliber rifles, submachine guns, and grenade launchers, to assault rifles (AK-47s, AR-15s, FN SCARs) and handguns. In addition to the weapons, LOMAS and his co-conspirators supplied tens of thousands of rounds of ammunition to the TCO. Some of these weapons and ammunition were acquired in the United States, including in California, Arizona, and Nevada, and then smuggled through the Ports of Entry in San Diego and Arizona into Mexico. Depicted below are some of the weapons that LOMAS trafficked on behalf of the TCO.







### C.  Selection of Recovered Messages Between JORGE and LOMAS

During the investigation, LOMAS was frequently mentioned by JORGE and multiple TCO members regarding the acquisition of various types of firearms. In addition, LOMAS communicated directly with JORGE. A sampling of their messages is shown below.

<u>May 22, 2020</u>

JORGE: I need grenades and "papas" [grenade launchers] sir.

LOMAS: That's great, sir. Last week they offered me grenades. There was 3. Let me check. I'll tell them over here to bring… …the "skar" [SCAR/weapon].

<u>May 24, 2020</u>

LOMAS: It would be like this. 640 thousand pesos radio/cell phones. 44 dollars AK47 RPD's. 29 dollars for the Ares [pos. machine guns]. 13700 dollars for the "scar" 308. 13700 dollars for the "scar" 308. 65 thousand pesos for the automatic AK47. 77 thousand pesos tactical AK47. 74 thousand pesos for camouflage AK47.

JORGE: Great, sir.

LOMAS: They haven't called me, sir.

JORGE: They'll call you in 10 minutes, sir.

LOMAS: Yes, sir. They delivered it, thank you. I'll start to get on the move. And I'll start delivering by tomorrow.

<u>May 27, 2020</u>

JORGE: You ordered the potatoes [pos. 40 MM] right sir [?]

LOMAS: Potatoes there's 5 coming in. Once they arrive, I'll send them.

JORGE: Alright well, I had sent for 50 x 39 thousand pesos, I sent in 1,950 thousand pesos. We said we'd try 50. "Tostones" [slang 50] caliber 50 I need those bad ass sir, wherever they're at I'll pick them up if inside or in "La Vegas."

LOMAS: I'll be more on the look out. I told them no problem.

<u>May 29, 2020</u>

JORGE: Could you get me Minimis in Las Vegas[?]

|   |   |
|---|---|
| 1 | LOMAS: Let me check. It's just that with ll this Coronavirus stuff things get backed |
| 2 | up. |
| 3 | JORGE: Hey, not vests, but I do need helmets. |
| 4 | LOMAS: Hopefully that [Coronavirus] ends soon. How many vests. Oh, sorry, how |
| 5 | many helmets. |
| 6 | JORGE: Oh, yes, can the vest can handle the 308[?] |
| 7 | LOMAS: I'll check to see if there some for that caliber. |
| 8 | JORGE: About 100 sir. Oh yeah, well get me the 100. |
| 9 | LOMAS: Alright, hold on sir. I'll get back to you. |
| 10 | JORGE: It's because I have about 300 "monos" [[pos. guys]. And I'm equipping them. |
| 11 | LOMAS: Are they a lot, sir[?] But yes, you're missing quite a couple of poles. So that |
| 12 | everything is left well equipped. |
| 13 | JORGE: Yes sir, everything that comes up get it for me, sir. Vests, helmets, and poles. |
| 14 | magazines I need a lot for AK47 and the "R" sir. |

### May 31, 2020

|   |   |
|---|---|
| 16 | JORGE: Great, sir.  Thank you for doing those favors for me. |
| 17 | LOMAS: Thank you, sir. For trusting in me. It's fucking tough to purchase something |
| 18 | here at the ranch from a stranger. Because you know how there's those other ones |
| 19 | that are just waiting to be taunted to fuck people over. |
| 20 | JORGE: No, worries sir.  Honestly, I know that you've been good to me. In any way |
| 21 | that I can, you can count on my friendship. |
| 22 | LOMAS: Thank you, sir.  You've been great 100 all the way ever since I met you over |
| 23 | there in the business.  You treat others well and don't look down upon them. |

### June 1, 2020

|   |   |
|---|---|
| 25 | LOMAS: Sir we need to pay for the "Ares." There's a couple of ones that I got on |
| 26 | credit which are still pending. |
| 27 | JORGE: Yes sir, in 2 hours I'll pay you all of it.  The money is on it's way, as soon as |
| 28 | it gets here I'll give it to you, in 2 hours, sir. |

LOMAS: Alright, great sir. We'll keep looking for stuff over here. Let me know about the "papas" [40 mm]. As soon as they blast them.

## III.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Guidelines Calculations

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory and are to be considered in conjunction with the factors set forth in 18 U.S.C. § 3553(a) in imposing a sentence.

As an initial matter, under USSG § 3D1.2(c), Counts 2 through 5 are grouped together and Count 2, the conspiracy to import cocaine count, produces the highest base offense level. The underlying offense (in Count 2) is the conspiracy to import 450+ kilograms of cocaine, so under USSG § 2D1.1(c)(1), the base offense level is 38. Because the Defendant possessed multiple firearms during the offenses, the parties are jointly recommending a two-level upward adjustment pursuant to § 2D1.1(b)(1). Next, the parties are jointly recommending a two-level upward adjustment under USSG § 2S1.1(b)(2)(B) because the Defendant was convicted under Section 1956 (Count 4). The parties also agreed to recommend a three-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(b), and a two-level downward departure under USSG § 5K2.0 for the Defendant's speedy resolution of the case and complete appellate waiver.

The adjusted offense level is 37 and, as indicated in the presentence report, Defendant has 0 criminal history points, placing him in Criminal History Category I, resulting in a Guideline range of 210 to 262 months.

For the reasons set forth below, the United States recommends the Court sentence the Defendant to the low-end of the Guidelines Range on Counts 2-4, namely 210 months in custody and 5 years of supervised release (3 years on Count 4). In addition, the United States recommends 60 months consecutive on Count 5 and 3 years of supervised release. Therefore, in total, the United States is requesting a sentence of 270 months in custody for the Defendant.

### B.     The Sentencing Factors

Section 3553 states that the Court should consider the nature and circumstances of the offense and the characteristics of the defendant. In addition, it states that the Court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). The sentence should also protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D). The Court shall also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Upon applying these sentencing factors to this case, a sentence of incarceration of 270 months is appropriate and not greater than necessary to comply with the goals outlined in 18 U.S.C. § 3553, et seq.

#### 1.     *<u>The nature and circumstances of the offense, the need for just punishment and to reflect the seriousness of the offense.</u>*

The Defendant's conduct should not be taken lightly. The majority of firearms trafficked into Mexico—including high caliber and assault weapons—are shipped from the United States. The rise of privately made firearms, or "ghost guns," has only made this problem more acute. These weapons empower drug cartels to intimidate local communities, challenge state authority, and expand their deadly drug trade back into the United States. Tragically, some of these weapons have been used against Mexican security forces bravely seeking to capture cartel leaders responsible for so much death and destruction both in Mexico and the United States

In this case, the Defendant worked directly with the leader of the TCO, JORGE, and his top echelon leadership, to supply hundreds of weapons and tens of thousands of rounds of ammunition to the organization. These firearms and ammunition were then used by the TCO to attack Mexican security forces, rival cartel members, and innocent civilians. In summary, the Defendant played a vital role supplying weapons to the TCO, which in turn,

deployed these weapons to protect their criminal enterprise, which distributed a staggering quantity of cocaine in the United States and moved tens of millions of dollars in drug proceeds back to the TCO in Mexico.

### 2.     *The need for deterrence and to promote respect for the law.*

Deterrence and respect for the law are important in this case for two reasons. First, helping to traffic firearms and ammunition to a major Mexican drug cartel is a serious offense, for which there must be a consequence. The law does not tolerate those who perpetuate the trafficking of firearms from the United States to Mexico and within Mexico. Second, while it is unlikely that Defendant will reoffend (he will be deported to Mexico following the custodial sanction in this case), the deterrence at issue here is general deterrence to others in the community, who may be tempted by easy money and a better lifestyle for relatively little work as a firearms trafficker.

### 3.     *The history and characteristics of the defendant.*

The Court must also consider the history and characteristics of the Defendant, which do not appear to suggest any significant mitigating factors. The Defendant is a healthy 33-year-old Mexican citizen with some college education. He did not report any substance abuse issues or serious mental health conditions. Defendant also reported steady employment at a cellphone store in Culiacan. Despite these factors, the Defendant decided to work closely with the TCO and supply them with deadly weapons and ammunition.

## IV.

## **CONCLUSION**

For the reasons stated above, the United States respectfully requests that this Court sentence the Defendant to a total term of two hundred and seventy months of custody to be followed by five years of supervised release. In light of the nature and circumstances of the offenses, the recommended sentence is appropriate. Such a sentence would account for the nature of the Defendant's serious crimes and deter the Defendant and other firearms traffickers, who seem to treat jail as a business risk, from trafficking dangerous weapons from the United States to Mexico. Accordingly, the United States respectfully requests that the Court impose a total term of two hundred and seventy months of custody to be followed by five years of supervised release.

DATED: October 11, 2023                           Respectfully submitted,

                                                  TARA K. MCGRATH
                                                  United States Attorney


                                                  /s/ Matthew J. Sutton
                                                  MATTHEW J. SUTTON
                                                  MIKAELA L. WEBER
                                                  Assistant United States Attorneys

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 21-cr-02960-AGS |
|---|---|
| v. | **CERTIFICATE OF SERVICE** |
| ALFREDO LOMAS NAVARRETE (25), | |
| Defendant. | |

  I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and am not a party to the above-entitled action; that I served the following document: United States' Sentencing Memorandum, in the following manner: by electronically filing with the U.S. District Court for the Southern District of California using its ECF System.

DATED: October 11, 2023      /s/ Matthew J. Sutton
                  MATTHEW J. SUTTON